# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Allan Kidston | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:11-cv-2036-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Resources Planning Corp., | ) | |
| James A. Parsons, | ) | |
| Donald H. Parsons, Jr., and | ) | |
| Sarah Parsons | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon Defendants James A. Parsons ("James"), Donald H. Parsons, Jr. ("Donald, Jr."), and Sarah Parsons ("Sarah") (collectively "the Shareholder Defendants") Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). After considering the Complaint and supporting legal memoranda, the Court denies Defendants' Motion.

## BACKGROUND

Resources Planning Corporation ("RPC"), a Michigan Corporation with its principal place of business in South Carolina, was founded in 1971 by Donald Parsons, Sr. and one of his business partners. At that time, Donald Parsons, Sr. named Donald, Jr., James, and Sarah as shareholders. Subsequently, Donald, Jr., James, and Sarah became the sole shareholders. Donald, Jr. is a citizen and resident of Colorado, Sarah is a citizen and resident of Connecticut, and James is also a citizen and resident of Connecticut.

RPC was in the business of managing the property known as Litchfield Plantation, holding real estate investments, providing hospitality services, and other business activities in Pawleys Island, South Carolina. Litchfield Plantation Company ("LPC") owns Litchfield Plantation. The Shareholder Defendants' stepmother, Louise Parsons, is the sole shareholder of LPC. In addition to managing LPC's property, Litchfield Plantation, RPC held a security interest in LPC's assets.

Allan Kidston ("Plaintiff" or "Kidston") served as President and Chief Executive Officer of RPC from 1980 until 2011. According to Plaintiff, on May 1, 2006 he entered into an Executive Employment Agreement (the "Agreement") with RPC. Jeffery W. Van Treese ("Van Treese"), Senior Vice President and General Counsel of RPC, signed the agreement on behalf of the corporation. The Shareholder Defendants were not a party to the Agreement. However, the Shareholder Defendants, at Plaintiff's request, did consent to the terms of the Agreement. *See* Pl's. Res. to Def.s' Mot. to Dismiss, Ex. D "Consent of Shareholders to Employment Agreement without a Meeting." Plaintiff claims the Agreement provided that he would be paid a salary, bonus, deferred compensation, reimbursement of expenses, automobile allowance, and benefits. Plaintiff resigned April 20, 2011 because, according to Plaintiff, economic conditions had stressed RPC's financial affairs.

Plaintiff alleges three causes of action. (1) First, Plaintiff alleges that RPC breached the Agreement. (2) Second, Plaintiff alleges that liens have been placed against him, as President and CEO of RPC, by the State of South Carolina, because RPC failed to pay certain taxes and employee withholding to the South Carolina Department of Revenue. He claims that "[t]he Shareholders were/are aware of, and participated in the failure of RPC to make said payments, and were/are aware of the liens against Plaintiff and Plaintiff's personal exposure." Comp. ¶ 18.

(3) Finally, Plaintiff alleges that he is entitled to recover damages from RPC and the Shareholder Defendants under the South Carolina Payment of Wages Act ("SCPWA"). Plaintiff alleges that the Shareholder Defendants are RPC agents and his employer as defined by SCPWA. Specifically, Plaintiff alleges that "[t]he Shareholders were directly involved in the issues surrounding the failure of RPC to pay compensation due, and were and are aware of the failure of the corporate Defendant to pay compensation [] as required by law." Comp.¶ 12.

## PERSONAL JURISDICTION STANDARD

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When a court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.[1] *Foster v.*

---

[1] South Carolina's long-arm statute provides that :

*Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623-24 (4th Cir. 1997). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State." *Goodyear Dunlap Tires Operations v. Brown*, 131 S.Ct. 2846, 2851 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject

---

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

(1) transacting any business in this State;
(2) contracting to supply services or things in the State;
(3) commission of a tortious act in whole or in part in this State;
(4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
(5) having an interest in, using, or possessing real property in this State;
(6) contracting to insure any person, property, or risk located within this State at the time of contracting;
(7) entry into a contract to be performed in whole or in part by either party in this State;or
(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. CODE 36-2-803(a).

4

to the States's regulation." *Id.* (internal quotation and citation omitted). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation omitted).

In this case, none of the Shareholder Defendants have contacts with South Carolina sufficient to support general jurisdiction. As such, the Court needs only determine whether Defendants' contacts related to this case are sufficient to subject Defendants to specific jurisdiction in South Carolina. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011) (stating that "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (internal quotations omitted)). "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . .'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In addition to minimum contacts, the Court must also consider whether the exercise of jurisdiction in this case "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).[2] In determining whether the exercise of jurisdiction comports with 'fair play and substantial justice, the court evaluates the following factors:

---

[2]In *J. McIntyre Machinery*, the plurality did not use the traditional two step analysis – looking first at minimum contacts and second at traditional notions of fair play and substantial justice. Instead, the plurality focused on whether the defendant purposefully availed itself of the privilege of conducting activities within the forum State. *See J. McIntyre Machinery*, 131 S.Ct. 131 S.Ct. 2780, 2789 (2011) (plurality opinion) (stating that "a rule based on general notions of fairness and forseeability, is inconsistent with the premises of lawful judicial power"). However, the concurring opinion stated that "on the record present here, resolving this case requires no

> [ (1) ] the burden on the defendant, [ (2) ] the forum State's interest in adjudicating the dispute, [ (3) ] the plaintiff's interest in obtaining convenient and effective relief, [ (4) ] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [ (5) ] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs.,* 259 F.3d at 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477)). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (quotations and citations omitted). Thus, for exercise of jurisdiction to be constitutionally reasonable the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

## ANALYSIS

Generally, out of state "[s]hareholders in a corporation do not subject themselves to personal jurisdiction in the forum in which the corporation was formed." *Marriott PLP Corp. v. Tuschman*, 904 F. Supp. 461, 466 (D.Md. 1995) (citing *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977)). Additionally, shareholders are not automatically subject to personal jurisdiction in those forums where the corporation does business. S*ee Jemez Agency, Inc v. CIGNA Corp.* 866 F. Supp. 1340, 1348 (D.N.M. 1994) ("No one would seriously argue that an individual shareholder could, consistent with due process, be required to defend suit in a distant state merely because

---

more than adhering to our precedents." *Id.* at 2792 (Breyer, J., concurring). After *McIntyre*, the relevance of fairness as part of the jurisdictional inquiry is unclear. In this case, after determining whether Plaintiff has made a prima facie showing that the Shareholder Defendants have sufficient minimum contacts with South Carolina, the Court has also considered whether Plaintiff has made a prima facie showing that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.

the corporation does business or committed torts there."). However, when shareholders are personally involved in the decision making process, their status as shareholders is not always sufficient to defeat jurisdiction. *See Springs Indus. v. Gasson*, 923 F. Supp. 823, 827 (D.S.C. 1996). In *Springs Industries*, the court found jurisdiction over a director of a company because "[a]t this stage of the proceedings, [Plaintiff] has alleged sufficient facts to show that [Defendant] was involved in the decision making which is causally related to its injury and that he was at least in part, the guiding spirit behind the wrongful conduct." *Id.* at 827. Similar to the director in *Springs Industries*, if the Shareholder Defendants were personally involved in the decision making which is causally related to Plaintiff's alleged injury, then their status as shareholders may be insufficient to defeat jurisdiction.

The parties present vastly different versions of the Shareholder Defendants' role in running RPC and making corporate decisions. The Shareholder Defendants maintain that they did not actively participate in the management of the company, make any decisions on behalf of company, hire or fire employees, attend board meetings, serve on the board of directors, or otherwise have any role in the company's management. On the other hand, Plaintiff argues that the Shareholder Defendants "(1) acted as the sole shareholders of a corporate citizen of South Carolina; (2) directly participated in the Employment Agreement to be given effect in South Carolina; (3) employed Plaintiff for more than thirty-one (31) years to perform services in South Carolina; (4) provided Plaintiff written acknowledgement that RPC had failed to pay Plaintiff his wages; and (5) exclusively control payment to Plaintiff by expressly declaring no resolution could be passed or compensation paid to Plaintiff without their approval." Pl.'s Res. to Defs.' Mot. to Dismiss at 7.

7

Whether the Shareholder Defendants acted as passive shareholders or participated in the decision making process remains unclear at this point in the proceedings. However, after construing all relevant pleading allegations in the light most favorable to Plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, Plaintiff has made a prima facie showing of a jurisdictional basis. His allegations regarding the Shareholder Defendants' involvement in the decision making which is causally related to his injury is sufficient to make a prima facie showing of minimum contacts. Additionally, those allegations are sufficient to make a prima facie showing that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

## CONCLUSION

Therefore, it is **ORDERED**, for the forgoing reasons, that Defendants' Motion to Dismiss is denied.

PATRICK MICHAEL DUFFY
United States District Judge

**December 8, 2011**
**Charleston, SC**