# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Allan Kidston | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:11-cv-2036-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Resources Planning Corp., | ) | |
| James A. Parsons, | ) | |
| Donald H. Parsons, Jr., and | ) | |
| Sarah Parsons | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendant Resources Planning Corporation's ("RPC") Motion to Compel Arbitration and to Stay and Defendants' Jim Parsons, Donald Parsons, Jr., and Sarah Parsons (collectively, the "Shareholder Defendants") Motion to Compel Arbitration and to Stay. For the following reasons, the Court grants both motions.

## BACKGROUND

Allan Kidston ("Plaintiff" or "Kidston") served as President and Chief Executive Officer of RPC from 1980 until 2011. According to Plaintiff, on May 1, 2006 he entered into an Executive Employment Agreement (the "Agreement") with RPC. Plaintiff claims the Agreement provided that he would be paid a salary, bonus, deferred compensation, reimbursement of expenses, automobile allowance, and benefits. Plaintiff resigned April 20, 2011 because, according to Plaintiff, economic conditions had stressed RPC's financial affairs.

Plaintiff asserts claims against RPC and the Shareholder Defendants. (1) First, Plaintiff alleges that RPC breached the Agreement. (2) Second, Plaintiff alleges that liens have been

1

placed against him, as President and CEO of RPC, by the State of South Carolina, because RPC failed to pay certain taxes and employee withholding to the South Carolina Department of Revenue. He claims that "[t]he Shareholders were/are aware of, and participated in the failure of RPC to make said payments, and were/are aware of the liens against Plaintiff and Plaintiff's personal exposure." Compl. ¶ 18. (3) Finally, Plaintiff alleges that he is entitled to recover damages from RPC and the Shareholder Defendants under the South Carolina Payment of Wages Act ("SCPWA"). Plaintiff asserts that the Shareholder Defendants are RPC agents and his employer as defined by SCPWA. Specifically, Plaintiff alleges that "[t]he Shareholders were directly involved in the issues surrounding the failure of RPC to pay compensation due, and were and are aware of the failure of the corporate Defendant to pay compensation [] as required by law." Compl.¶ 12.

## PROCEDURAL HISTORY

On May 27, 2011, Plaintiff filed his Complaint in state court. On August 3, 2011, Defendants removed the case to federal court. On September 9, 2011, RPC filed a motion to dismiss under Rule 12(b)(5), contending that Plaintiff's service of the Complaint upon it was insufficient. RPC later agreed to accept service. Also on September 9, 2011, the Shareholder Defendants filed a motion to dismiss under Rule 12(b)(2). In the Shareholder Defendants' motion to dismiss, they argued that the Court lacked personal jurisdiction over them. The Court denied that motion because Plaintiff's allegations were sufficient to make a prima facie showing of personal jurisdiction. On December 22, 2011, Defendants filed an Answer that denied Plaintiff's allegations of liability and asserted several affirmative defenses. Defendants filed an Amended Answer on May 10, 2012 that includes additional affirmative defenses and counterclaims.

## ANALYSIS

### I. Legal Standard for Compelling Arbitration

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989). The Fourth Circuit has said that arbitration "'should not be denied unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute.'" *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

A party can compel arbitration if he establishes four things: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Am. Gen. Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir.2005). *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

## II. RPC's Motion to Compel Arbitration

Plaintiff does not argue that any of the four requirements under the FFA are unsatisfied. Instead, he argues that Defendant RPC has forfeited its right to arbitrate. "[D]efault or waiver arises when the party seeking arbitration 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). "However, . . . [the Fourth Circuit] ha[s] consistently held that because of the strong federal policy favoring arbitration '[they] will not lightly infer the circumstances constituting waiver.'" *Id.* (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). "The party opposing arbitration on the basis of waiver thus bears a 'heavy burden.'" *Id.* (quoting *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 251 (4th Cir. 2001) (internal quotations omitted). "Although mere delay, without more, will not suffice to constitute waiver, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Am. Recovery Corp.*, 96 F.3d at 95 (internal citations and quotation marks omitted).

Prior to seeking arbitration, Defendants utilized the litigation machinery by (1) removing the case to federal court, (2) filing motions to dismiss, and (3) answering the complaint. This activity has not prejudiced Plaintiff. For example, "it is clear that the removal of a state action is not to be deemed a 'default' or 'waiver'. . . ." *See In re Mercury Constr. Co.*, 656 F.2d 933, 940 (4th Cir. 1981)(en banc)(citing *Garner Lumber Co. v. Randolph E. Valenski, Lange, Inc.*, 393 F.Supp. 161, 162 (W.D.N.C. 1974), *aff'd*, 513 F.2d 1171 (4th Cir. 1975). Like removal, the motions filed under 12(b)(5) and 12(b)(2) will not be deemed a waiver because having those motions heard before moving to compel arbitration did not prejudice Plaintiff—those motions

did not involve the issues that will be the subject of the arbitration. *See Am. Reliable Ins. Co. v. Stillwell*, 212 F.Supp.2d 621, 628 (N.D.W.Va. 2002) ("Prejudice . . . refers to the inherent unfairness-in terms of delay, expense, or damage to a party's legal position-that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue" (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir.1997))). Additionally, while filing an answer is often considered the earliest point at which default or waiver of the right to enforce an arbitration agreement may be found, "[t]his does not mean . . . that the filing of an answer will always amount to waiver." *Id.* In fact, unless Plaintiff is able to show that some actual prejudice will result from being compelled to arbitrate, none of Defendants' utilization of the litigation machinery will prevent the Court from compelling arbitration. *See Patten Grading & Paving*, 380 F.3d at 206 ("[T]he movant's participation in litigation activity alone will not suffice, as the dispositive question is whether the party objecting to arbitration has suffered actual prejudice.").

Plaintiff argues that proceeding with an arbitration against RPC, while his claims against the Shareholder Defendants are stayed, would prejudice him because any award would be unenforceable against the Shareholder Defendants, rendering the arbitration a meaningless proceeding. However, since Plaintiff's made this argument, the Shareholder Defendants have filed a separate Motion to Compel Arbitration. Therefore, any danger of prejudice resulting from requiring Plaintiff to arbitrate claims against one defendant and not the others has been eliminated now that all Defendants seek arbitration.

### III. The Shareholder Defendants' Motion to Compel Arbitration

As previously mentioned, the Shareholder Defendants have filed a Motion to Compel Arbitration and to Stay. The Shareholder Defendants are nonsignatories to the Agreement that contains the arbitration clause. Generally speaking, nonsignatories cannot enforce an arbitration

5

agreement. However, nonsignatories may enforce the terms of an arbitration agreement in cases where "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," or where "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *See Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citations omitted)). *See also, Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (holding that "the facts and claims against the Corporation and its shareholders are so closely intertwined that [Plaintiff's] claims against the non-signatory shareholders of the Corporation are properly referable to arbitration even though the shareholders are not formal parties to the [contract that includes the arbitration clause]"). Plaintiff does not dispute that the Shareholder Defendants are the type of nonsignatories that can enforce an arbitration agreement. Instead, Plaintiff makes the same default (waiver) argument regarding the Shareholder Defendants that he made as to RPC. Like RPC, the Shareholder Defendants have not "so substantially utilized the litigation machinery that to subsequently permit arbitration would prejudice [Plaintiff]." *See Patten Grading & Paving*, 380 F.3d at 204 (quotation omitted). The Shareholder Defendants have removed the case and filed a motion to dismiss. As the discussion above makes clear, these limited actions, coupled with the lack of any prejudice to Plaintiff, does not amount to a waiver or default of the Shareholder Defendant's right to compel arbitration.

Additionally, Plaintiff argues that the Shareholder Defendants should be estopped from enforcing the contract in this case because in RPC's Motion to Compel Arbitration and to Stay, RPC included "binding admissions which establish that the individual Parsons defendants

waived or defaulted in any right they may have had to compel plaintiff to arbitrate." Pl.'s Res. to Shareholder Defs.' Mot. to Compel Arb. and to Stay, at 2. These statements were made as part of RPC's argument that any part of the case that was not compelled to arbitration should be stayed. For example, RPC stated in its Motion to Compel Arbitration and to Stay that "[t]his is a clear-cut case for a stay of the non-arbitratable claims." *Id.* (quoting RPC's Mot. to Compel Arb. and to Stay, at 6) (emphasis not included). At the time RPC filed its Motion to Compel Arbitration, the Shareholder Defendants have not filed any motion seeking to have the claims against them arbitrated. RPC's attempt to have those claims stayed does not affect the Shareholder Defendants' right to compel arbitration.

**IV.   Stay**

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3 (2006). "This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Having found that the arbitration agreement is enforceable, the case must be stayed pending the outcome of the arbitration.

**V.   Venue for the Arbitration**

The employment contract provides that "[t]he arbitration will be conducted in South Carolina or such other jurisdiction as the Corporation's headquarters may be located." Employment Agreement ¶ 24. Plaintiff argues that South Carolina is the proper location for the arbitration. Defendants assert that the current RPC headquarters is Connecticut and argue that Connecticut is the appropriate place for the arbitration. This forum dispute is properly decided by the arbitrator, not the Court. *See Central West Virginia Energy, Inc. v. Bayer Cropscience LP,* 645 F.3d 267, 274 (4th Cir. 2011) (finding that a dispute over which arbitration panel—one

in Richmond, VA or Charleston, WV—should decide certain issues does not implicate whether to proceed by arbitration, and thus, is "far more akin to a venue dispute than a question of arbitrability, and, as such, it is appropriate for arbitral resolution."). *See also Nat'l Network of Accountants Inv. Advisors, Inc. v. Gray*, 693 F.Supp.2d 200, 202 (E.D.N.Y. 2010) ("Here, the parties agreed to arbitrate any controversy between the parties arising out of [National Network of Accountants Investment Advisors] business or [the parties' contract] . . . the parties thus agreed to arbitrate any controversy concerning the venue for adjudicating further disputes.")(internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that Defendants' Motions to Compel Arbitration and to Stay are **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**June 29, 2012**
**Charleston, SC**